UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
UNITED STATES OF AMERICA,      :
          :
          Plaintiff,     :   **MEMORANDUM DECISION AND**
          :   **ORDER**
     - against -      :
          :   24-cr-453 (BMC)
ROGER MORALES,        :
          :
          Defendant.    :
-------------------------------------------------------- X

**COGAN**, District Judge.

In November 2024, a grand jury returned a one-count indictment against Roger Morales, charging him with murder-in-aid-of-racketeering under 18 U.S.C. § 1959(a)(1) for the 2011 killing of Norman Mizzell. Before the Court is defendant's pretrial motion to dismiss the indictment. For the reasons that follow, defendant's motion to dismiss is denied.

## BACKGROUND

The following facts are taken from the indictment and are assumed true for the purpose of the motion to dismiss. See Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

La Mara Salvatrucha, or the "MS-13," was a transnational criminal organization with members located throughout Queens, Long Island, and elsewhere. Members of the MS-13 held meetings to plan criminal activity, engaged in acts of violence and other criminal activity, and paid dues into a treasury to fund the purchase of weapons for use in criminal activity in both Central America and the United States. Additionally, members could get promoted to higher ranks or leadership positions by participating in criminal activity, especially violence directed at rival gang members or at MS-13 members or associates believed to have violated the MS-13's rules. The indictment avers that the MS-13 and its leaders, members, and associates constituted

an "enterprise" as defined by 18 U.S.C. § 1959(b)(2), and engaged in racketeering activity as defined by 18 U.S.C. §§ 1959(b)(1) and 1961(1).

Defendant Roger Morales, also known as "Crazy, "Ciclon," and "Cyclone," was a member of the MS-13.  On or about June 5, 2011, defendant, "together with others, for the purpose of gaining entrance to and maintaining and increasing position in the MS-13, ... did knowingly and intentionally murder Norman Mizzell."

## LEGAL STANDARD

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him."  United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000); see Hamling v. United States, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").  Otherwise, the indictment "offends both the Fifth and Sixth Amendments."  Pirro, 212 F.3d at 92 (citing Russell v. United States, 369 U.S. 749, 760-61 (1962)).  An indictment which does not state the essential elements of the crime offends the Fifth Amendment because it can neither protect the defendant against double jeopardy nor assure the defendant "that he is being tried on the evidence presented to the grand jury ... or that the grand jury acted properly in indicting him."  Id. (citations omitted).  Moreover, such an indictment offends the Sixth Amendment because it prevents the defendant from "be[ing] informed of the nature and cause of the accusation against him."  Id. (internal quotation marks and citations omitted).

Federal Rule of Criminal Procedure 7(c)(1) requires only that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Supreme Court has long held that it "is generally sufficient that an indictment set forth the

2

offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). The result is that "an indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Pirro, 212 F.3d at 92).

Of course, "an indictment cannot stand if the facts alleged do not constitute an offense as a matter of law." United States v. Sun, No. 24-cr-346, 2025 WL 1296456, at *2 (E.D.N.Y. May 5, 2025) (internal quotation marks and citations omitted); see also United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."). "In other words, if the actions alleged could not possibly form the basis of liability of the offenses charged in an indictment, such an indictment must be dismissed." Sun, 2025 WL 1296456, at *2.

However, "[a]t the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial." United States v. Wedd, 993 F.3d 104, 121 (2d Cir. 2021); see also United States v. Wey, No. 15-cr-611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) ("An indictment does *not* ... have to specify evidence or details of how the offense was committed." (emphasis in original) (internal quotation marks and citation omitted)). Thus, "if an indictment includes allegations of actions that *could* satisfy all of the essential elements of a charged offense, the indictment will survive a motion to dismiss." Sun, 2025 WL 1296456, at *2 (emphasis in original).

Notably, "[t]he dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks and citation omitted); see also United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979) ("[T]he sanction [of dismissal of an indictment] is so drastic that, especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases."). Thus, "[w]hen the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, [the Second Circuit] has repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity. Stringer, 730 F.3d at 124 (cleaned up).

## DISCUSSION

The indictment contains one count: murder-in-aid-of-racketeering under 18 U.S.C. § 1959(a)(1), or "VICAR murder." To ultimately convict a defendant of VICAR murder, the Government must prove beyond a reasonable doubt

> (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that that defendant committed or aided and abetted the murder, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

United States v. Persico, 645 F.3d 85, 105 (2d Cir. 2011) (citations omitted). The facts underlying the offense will eventually be tested, but we're not there yet. Right now, it's sufficient that the indictment "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." See Stringer, 730 F.3d at 124 (quoting Pirro, 212 F.3d at 92)). Specifically, the indictment alleges (1) that the MS-13 was a racketeering enterprise that affected interstate commerce; (2) that the MS-13 was engaged in racketeering activity as defined in RICO; (3) that defendant had a position in the MS-13; (4) that defendant, together with others, murdered Mizzell; and (5) that defendant's general purpose in

doing so was "gaining entrance to and maintaining and increasing position in the MS-13." The indictment also alleges that the murder occurred on or about June 5, 2011 within the Eastern District of New York and elsewhere. On balance, the indictment "fairly informs [] defendant of the charge against which he must defend, and ... enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." See Hamling, 418 U.S. at 117.

Defendant nonetheless challenges the sufficiency of the indictment because it does not allege (1) facts establishing the "purpose" element of the offense; (2) that defendant was a member of or acting on behalf of the MS-13 at the time of the offense; and (3) the existence of any federal racketeering nexus. These challenges fail. As explained above, the indictment clearly meets the standard for sufficiency, which is all that was required. Further, "[t]he language in an indictment is not required to be as precise as the attendant jury charge, nor is it required to delineate how the government will prove the elements set forth in the indictment." United States v. Skelos, 988 F.3d 645, 659 (2d Cir. 2021). The indictment need not allege, for example, when defendant joined the MS-13 or how the murder benefitted the MS-13; it is enough that the indictment alleges that defendant was a member of the MS-13 and committed the murder to maintain or increase his position in the MS-13.

Additionally, "[w]hen an indictment delineates the elements of a charged offense, however concisely, the underlying concerns of proper pleading ... may be further promoted by a bill of particulars or pre-trial discovery." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (citation omitted). Here, the Government represents that it has provided specific details to defendant in its detention memorandum and in Rule 16 discovery concerning when, where, and how the murder of Mizzell occurred. These disclosures, coupled with an already sufficient indictment, make defendant's challenges seem purely academic. It is "beyond

question" that defendant has been "sufficiently informed to defend against the charge[] and to be protected against the risk of double jeopardy." See Stringer, 730 F.3d at 124-25.

Finally, defendant's argument that this case should be dismissed without prejudice to state prosecution is based on a false premise: that the indictment "does not articulate any interstate commerce connection," or "racketeering nexus." To the contrary, the indictment alleges that defendant murdered Mizzell "for the purpose of gaining entrance to and maintaining and increasing position in the MS-13, *an enterprise engaged in racketeering activity.*" (Emphasis added). Beyond that, to the extent that defendant's offense "is susceptible to prosecution in either state or federal court, [defendant] has no constitutional right to be prosecuted in the forum of his choice." United States v. Analytis, 687 F. Supp. 87, 92 (S.D.N.Y. 1988). Because the indictment "sets forth a basis for a federal prosecution, ... defendant simply has no standing to demand that the United States Attorney forgo [this] prosecution in favor of a state prosecution," especially a purely theoretical one. See id.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
　　　January 7, 2026

6